IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN<br>Plaintiff,<br><br>vs.<br><br>GLENDALE M. EATON, individually and as trustee of the GM & CR Eaton Living Trust, the GM & CR EATON LIVING TRUST, and Defendant(s). | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:13-cv-00440<br><br>Judge Dee Benson |

Defendants GM & CR Eaton Living Trust and Mr. Glendale Eaton in his capacity as trustee of the Trust, and Mr. Eaton individually, move to dismiss Plaintiff R. Wayne Klein's (the "Receiver") complaint in this case. The parties did not request oral argument. Having reviewed the parties' briefing and the relevant law, the court enters the following Memorandum Decision and Order.

## BACKGROUND

This case is ancillary to a recent case brought by the Securities and Exchange Commission (the "SEC") against National Note of Utah, LC ("National Note") and Wayne LaMar Palmer, for various alleged fraudulent activities. See Securities and Exchange Commission v. National Note of Utah, LC et al., Case No. 2:12-cv-00591 (D. Utah) (Jenkins, J.) (hereinafter "SEC Civil Enforcement Case"). The court-appointed Receiver of National Note

filed a complaint against Defendants seeking to recover, for the benefit of the receivership estate, transfers made by National Note to the Defendants. The Receiver alleges that during 2006, Defendants invested an initial $50,000.00 in National Note and then received interest payments of $12,091.78 over the course of two years as well as the return of the principal amount. (Compl. ¶¶ 14-17.) The Receiver filed the instant action against Defendants claiming the transactions qualify as fraudulent transfers under the Utah Code, and Defendants filed a motion to dismiss.

## DISCUSSION

### I. Personal Jurisdiction

Defendants' assert that this court does not have personal jurisdiction over them in this case. Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) "whether the applicable statute potentially confers jurisdiction" by authorizing service of process on the defendant, and (2) "whether the exercise of jurisdiction comports with due process." Peay v. BellSouth Medical Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000) (citation omitted). Although both requirements must be satisfied before a suit can proceed, they are distinct concepts that require separate inquiries. Id.

*a. Nationwide Service of Process*

Regarding the first requirement, the Receiver was authorized to serve process on Defendants in this case. Under 28 U.S.C. § 754, federal receivers are granted authority to protect receivership "property, real, personal or mixed, situated in different districts." 28 U.S.C. § 754. To preserve this authority, a receiver must "within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for

each district in which property is located."[1]  Id.  Additionally, 28 U.S.C. 1692 states that when such property lies in multiple districts, "process may issue and be executed" in any such district "as if the property lay wholly within one district."  And this court has found that when 28 U.S.C. §§ 754 and 1692 are read together, these federal receiver statutes confer nationwide service of process for in personam as well as in rem jurisdiction.  Wing v. Apex Holding Co., LLC, 2009 WL 2843343, at *3 (D. Utah Aug. 27, 2009).

    b.  *Due Process*

Next, defendants assert that this court's exercise of jurisdiction over them would violate due process under both the Fifth and Fourteenth Amendments.  However, where, as here, nationwide service of process is established by federal statute, "the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment."  Peay, 205 F.3d at 1210 (citation omitted).  In Peay, the Tenth Circuit set the standard for determining whether due process is met in a nationwide service of process case:

> [I]n evaluating whether the defendant has met his burden of establishing constitutionally significant inconvenience, courts should consider the following factors: (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

Id. at 1211-12.

---

[1] The Receiver timely filed Notices of Receivership in each of the four United States District Courts located in Texas within ten days of the court's entry of an order reappointing the Receiver entered on May 20, 2013 in the SEC Civil Enforcement Case.

Although this standard shares similarities with the requirements for personal jurisdiction under the Fourteenth Amendment, the Court emphasized that "it is only in highly unusual cases that inconvenience will rise to the level of constitutional concern." Id.  Additionally, the burden is on defendants to show that the court's exercise of jurisdiction will "make litigation so gravely difficult and inconvenient" that they are at a "severe disadvantage in comparison to [their] opponent." Peay, 205 F.3d at 1212 (10th Cir. 2000) (citations omitted).  Furthermore, even if a defendant can show that litigation in the chosen forum is unduly inconvenient, the court's jurisdiction will still comport with due process if the "federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." Id.  Regarding the federal interest in receivership litigation, this court has previously recognized that "[t]here is a strong federal interest in having [the court], which created the receivership, maintain litigation related to the receivership." Wing v. Storms, 2004 WL 724448, at *3 (D. Utah Feb. 5, 2004).

Regarding the first factor, Defendants argue that they have no contacts with the state of Utah.  However, the Receiver has submitted evidence that shows Defendants invested fifty-thousand dollars in National Note, which is a Utah company, and that they received twenty-three regular payments from National Note over the course of two years. See Compl. Ex. A (Dkt. No. 2-1.)

As to the second factor, although litigating in Utah would not be convenient for Defendant Mr. Eaton, he cannot show that this burden "rises to the level of constitutional concern." See Peay, 205 F.3d at 1213.  Any burden of litigating this matter in Utah is significantly lessened by technology that allows Mr. Eaton to communicate remotely with

counsel and to travel between Texas and Utah.  See id. ("modern methods of communication and transportation greatly reduce the significance of this physical burden.").

The third factor considers judicial economy.  Because this case is ancillary to the SEC Civil Enforcement Case currently before Judge Jenkins, a fellow judge in this district, litigating in this court conserves judicial resources by encouraging collaboration and efficiency in this case as well as in other cases initiated by the receiver which are pending in this district.

The fourth factor regarding the situs of discovery is roughly split.  Any deposition of Mr. Eaton will take place in Texas, where he resides.  However, business records and other discovery are likely to be located in Utah, where National Note was operated.  Additionally, Defendants' financial records are likely located in Texas and could easily be transmitted electronically.

The fifth and final factor is evenly split.  This factor evaluates the nature of the regulated activity in question and its impact beyond the borders of the defendant's state of residence.  Although Defendants' activities here consisted of passively investing from their home state of Texas, their investments affected Utah by benefitting a Utah company that the SEC has since alleged was operating as a Ponzi scheme.

In light of the above factors, the court concludes that the Fifth Amendment due process clause is not violated in this case because defendants have failed to establish that this is a highly unusual case, or that they will suffer from a severe disadvantage by litigating this matter in this court.  Furthermore, even if Defendants had met this burden, the federal interest in having a court in this district maintain all litigation related to the

National Note receivership outweighs the burden to Defendants. Otherwise, the value of creating a receivership at all would be questionable if the receiver were required to litigate every lawsuit in the respective home districts of each defendant. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## II.   Failure To State a Claim

Defendants next assert that the Receiver has failed to sufficiently state a claim against Mr. Eaton personally. On a motion to dismiss for failure to state a claim, "the Court accepts well-pled allegations of the Complaint as true and construes them in the light most favorable to the plaintiff." Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).

Here, the Receiver's complaint alleges that (a) "Eaton and the Trust commenced investing with NNU"; (Compl. ¶ 14.) (b) "Eaton and the Trust paid NNU cash in the total amount of $50,000 on or about 2006"; (id. at ¶ 15.) and (c) "NNU transferred a total of $62,091.78 in cash to Eaton and the Trust." (Id. at ¶ 16.) Additionally, the Receiver has attached an exhibit to the Complaint entitled "Investment Pay History," which purports to list the payments between National Note and Defendants. See Compl. Ex. A. Mr. Eaton's name, as well as the name of the Trust, is included at the top of the Exhibit. From these facts, it is impossible at this stage in the litigation to conclude that Eaton did not receive payments directly from NNU or did not receive monies from the Trust. Accordingly, the Receiver's assertions combined with the attached exhibit are sufficient to state a claim against Mr. Eaton personally that is plausible on its face. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Defendants also argue that the Receiver has failed to establish the requisite elements of a fraudulent transfer as it relates to the payments from National Note. However, as already discussed, the court must accept all well-pled allegations as true and construe them in the light

most favorable to the non-moving party. In his complaint, the Receiver asserted the following facts: (a) NNU operated as a Ponzi scheme from 1994 until the commencement of the SEC Civil Enforcement Case; (b) NNU was insolvent at all times relevant to the Complaint; (c) Defendants were investors in NNU; and (d) Defendants received specific amounts of money from NNU in excess of the amount of their principal investment. This information contains sufficient factual information to put the Defendants on notice of the claims asserted against them and the basis for the assertion of those claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

DATED this 5th day of May, 2014.

_____

Dee Benson

United States District Judge